WILLIAM LAMB, PLAINTIFF IN ERROR, v. BENJAMIN B. BRIGGS, DEFENDANT IN ERROR.

1. **Negotiable Instruments:** GUARANTY: ALTERATION. One B. sold to D. thirty-six head of ponies for the sum of $900, and took his note therefor, due in sixty days. B. insisting upon cash or a guaranty of the note, an arrangement was made with one L., a banker, who executed a receipt and guaranty as follows:

   Received of B. B. Briggs the following described note for collection: John J. Dunbar, July 28, 1879, $900, Sept. 28, 1879, and guarantee the payment of said note.

   B. B. BRIGGS,
   WM. LAMB.

Upon an answer alleging the alteration of the guaranty by the erasure of the name of Briggs after execution and delivery of the guaranty by Lamb, *Held*, That the question must be submitted to the jury, and it was the duty of the jury to answer special interrogatories submitted to them relating to such alleged alteration.

2. ———: ———: CONSIDERATION. Where one L. guaranteed the note of D., in consequence of which one B. delivered certain personal property to D., *Held*, A sufficient consideration for the guaranty.

3. ———: ———: EVIDENCE. A guarantor who has testified in an action on the note by the payee against the maker may, in an action by the payee against such guarantor, be asked on cross-examination if on the former trial he had not testified to certain facts, stating them, and his admission that he so testified will render it unnecessary to introduce proof of such testimony. But if proof that the witness so testified is afterward introduced, ordinarily it will be error without prejudice.

4. **Trial**: VERDICT. Section 295 of the code provides that, "When by the verdict either party is entitled to recover money of the adverse party, the jury in their verdict must assess the amount of recovery." A general verdict, therefore, in favor of a guarantor will not authorize a judgment against him based on a special finding of the jury that a specified sum was due the payee from the maker of the note, there being a dispute as to whether the guaranty of L. was jointly with B. or for the whole amount.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*Griggs & Rinaker*, for plaintiff in error.

*Pemberton & Bush*, for defendant in error.

MAXWELL, CH. J.

This action was brought in the district court of Gage county upon the following instruments:

"$900.      BEATRICE, NEB., July 28, 1879.

"Sixty days after date I promise to pay to the order of B. B. Briggs nine hundred dollars, at the office of Smith Bros., bankers. Value received.

"JOHN J. DUNBAR."

"BEATRICE, NEB., July 29, 1879.

" Received of B. B. Briggs the following described note for collection : John J. Dunbar, July 28, 1879, $900 Sep. 28, 1879, and guarantee the payment of said note.

"~~B. B. Briggs,~~

" WM. LAMB."

The defendant below, plaintiff in error, in his answer says : That he admits that he signed his name to the instrument upon which plaintiff's action is brought, but that at the time defendant signed his name thereto the said plaintiff also subscribed his name to said instrument; that after said instrument had so been signed by plaintiff and defendant, the said plaintiff took the said instrument, and has ever since the said time had the possession thereof; that after the said instrument had been so taken by the said plaintiff, he, the said plaintiff, fraudulently altered the said instrument by erasing therefrom the name of him, the said plaintiff; that the said alteration was made by the said plaintiff, without the knowledge or consent of defendant; that the said instrument set forth in plaintiff's petition and sued upon in this action is not the same instrument made and signed by this defendant as aforesaid, but is another and different instrument, and was not made, signed, and delivered by defendant, is not the instrument of the defendant, and is not binding upon the defendant.

*Second defense.* That he admits that he signed his name to the instrument upon which plaintiff's action is brought, but at the time defendant signed his name thereto the said plaintiff also signed his name to the said instrument ; that at the time said plaintiff took possession of the said instrument the names of both plaintiff and defendant were signed thereto ; that the said plaintiff subsequent to said time fraudulently altered the said instrument by erasing the name of him, the said plaintiff, therefrom ; that the said alteration was made without the knowledge or consent of the defendant; that the defendant denies that there was any consideration whatever for his signing his name to the

said instrument; that he alleges that there was no consideration whatever for his signing his name to the said instrument; that he alleges that the said instrument was signed on a day subsequent to the making, executing, and delivering of the promissory note mentioned therein; that the said instrument is without consideration and void; and that the defendant denies each and every allegation in plaintiff's petition contained not hereinbefore specifically admitted."

To this answer the plaintiff below, defendant in error, filed a reply; denying all the facts contained therein.

On the trial of the cause the court submitted certain interrogatories to the jury, as follows:

"1. Did plaintiff sign his name to the guaranty by inadvertence? Answer. " Defendant excepts.

"2. Did plaintiff sign his name to the guaranty sued on with Mr. Lamb, the defendant, with the intent to become co-guarantor jointly with the defendant? Answer." Defendant excepts.

"3. Was the signing of the guaranty by defendant any part of the consideration inducing the plaintiff to part with the horses which he turned over to Emery? Answer. Yes." Defendant excepts.

"4. Was the note described in the petition left by plaintiff with defendant for collection under defendant's exclusive control at the time of the signing of the guaranty by defendant and as part of the same transaction, and was that any part of the consideration inducing Lamb to sign the guaranty? Answer. Yes." Defendant excepts.

"5. How much is now due to plaintiff from John J. Dunbar on the note described in the petition? Answer. $1,320.30." Defendant excepts.

"6. Did plaintiff Briggs erase his name from the guaranty sued on with any fraudulent intent or for any dishonest purpose? Answer." Defendant excepts.

"R. J. CULLY,
" *Foreman.*"

It will be observed that a number of interrogatories were not answered by the jury, and this is now assigned for error. The jury also returned the following general verdict:

"BENJAMIN B. BRIGGS.
        Plaintiff.
    vs.
WILLIAM LAMB,
        Defendant.

"We, the jury in this case, being duly impaneled and sworn, do find for the defendant.

"R. J. CULLY,
"*Foreman.*"

The defendant in error thereupon moved for judgment upon the special finding for the sum of $1,320.30, notwithstanding the general verdict, which motion was sustained, to which the defendant below excepted.

Various errors are assigned in this court. The testimony tends to show that at the date of the note in question, the defendant in error sold to one J. J. Dunbar thirty-six head of horses for the sum of nine hundred dollars. At the time of the sale it seems to have been represented to the defendant in error that Dunbar's note was as good as cash, and could be converted into cash at any of the banks in the city of Beatrice. Lamb at that time was engaged in the banking business in Beatrice.

Mr. Briggs presented the note at the bank of Mr. Lamb, at the request of a Mr. Emory, who had acted as agent of Dunbar in the transaction. Mr. Lamb seems to have refused to cash the note, when Briggs declared he must have guaranteed paper or he would not deliver the horses. Considerable conversation seems to have taken place between Briggs and Lamb in regard to guaranteeing the note. The testimony tends to show that Lamb refused to endorse the note. An agreement, however, was entered into between Lamb and Briggs, in consequence of which Lamb signed

the guaranty above set out. Mr. Briggs testifies that he inadvertently signed his name to the guaranty, and erased the same by running a pen across his name before the guaranty was signed by Lamb. Lamb, and some of his witnesses, however, testify that Briggs' name was not erased at the time that Lamb signed the guaranty and delivered it to Briggs. There is thus a direct conflict in the testimony on that point, which was directly put in issue by the pleadings, and the court erred in not requiring the jury to answer the interrogatories relating to that question.

2. The testimony tends to show that Lamb personally had no interest in the transaction relating to the horses, but that Dunbar seems to have been regarded as solvent, and Lamb appears to have made out the guaranty for the purpose of enabling Dunbar to complete the trade and obtain possession of the horses. It is claimed on behalf of Lamb that there was no consideration for this guaranty. It is apparent, however, but for the guaranty the horses would not have been delivered to Dunbar. This, therefore, is a sufficient consideration for the guaranty.

3. On the trial of the cause Lamb was asked if he had testified as a witness in an action by Briggs against Dunbar upon the note in question. He answered : " I think I did." He was then asked, " whether or not on that trial this question was not asked you?" " State to the jury what this conversation was," and "whether you answered this : Well, the first I remember of, was Mr. Waldo and Mr. Emory came into the bank and spoke something about my signing a note; if I recollect right, they came in first. I hung off about signing the note and made some inquiries. Afterwards Briggs and Waldo came into the bank, and I was there, and I think my son was in the bank at the same time. They made a statement they wanted the note secured or money paid on it. We could not pay the money on the note, and they wanted I should sign it and make

it good.    I didn't want to do that.    Finally, in conversa-
tion—after that—there was some conversation about it, and
Briggs says in that conversation he let Dunbar have good
property and he wanted a good note, else he could not have
the horses.'"    He answered he might have so testified.
Afterwards Briggs offered the same testimony of the wit-
ness from the proceedings in the former trial.    This was ob-
jected to for various reasons, which need not be stated,
which objections were overruled and the testimony re-
ceived.    Such duplicate testimony was unnecessary and
improper, and should have been excluded.    But its ad-
mission was error without prejudice.

Section 295 of the code provides that, "When by the
verdict either party is entitled to recover money of the
adverse party, the jury, in their verdict, must assess the
amount of recovery."    *Ames v. Sloat*, Wright, 577.
*Black v. Wintersteen*, 6 Neb., 224.    *Bowers v. Rice*, 19
Neb., 576.    In the latter case the verdict was in the fol-
lowing form:    "We, the jury, duly impaneled and sworn,
do say that we find for the plaintiff."    It was held that
such a verdict would not authorize a judgment for any
sum whatever.    It is claimed on behalf of Briggs that
the special finding of the jury that the sum of $1,320.30
was due from John J. Dunbar to Briggs, was a sufficient
verdict to authorize a judgment against Lamb.    But this
does not follow unless the jury should also find that the
guaranty of Lamb was of the whole amount due upon
the note.    There was no verdict, therefore, upon which to
base a judgment.    Exceptions are taken to a number of the
instructions, but as there must be a new trial, in which, no
doubt, the case will be tried upon the issues made in the
pleadings, they need not be referred to.

There is testimony in the record tending to show that
an execution was issued in favor of Briggs and against
Dunbar on the judgment in question, and returned unsatis-
fied.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.